.Schneider Granite Company, Respondent, v. J. C. Fink Mineral Milling Company, Appellant.

**St. Louis Court of Appeals, February 7, 1899.**

1. **Instruction Criticised: MATERIAL ISSUE IGNORED.** The error in the instruction, in the case at bar, is that it made the case turn upon the question whether the word "merchantable" as applied to the spalls contemplated, was used in the trade to designate the particular size, to wit, spalls that one man could lift, thus ignoring the evidence of the defendant that the parties at the time agreed that the contract meant this.

2. **Contract: SUBJECT-MATTER OF: ADMISSIBILITY OF ORAL EVIDENCE.** In the case at bar, the evidence offered did not, under the circumstances, violate the general rule, as it did not vary nor add to the contract, but was admissible *(ex necessitate)* for the purpose of identifying the subject-matter of the contract.

*Appeal from the St. Louis City Circuit Court.*—Hon. John A. Talty, Judge.

REVERSED AND REMANDED.

Theodore Rassieur for respondent.

Parol evidence is inadmissible to contradict, add to, subtract from, control or vary a written contract. If the language is plain and unambiguous,·and the terms used have no technical meaning, different from their ordinary meaning, then the force and effect to be given to the contract must be determined by its terms, and oral evidence is inadmissible to give the contract a different construction from that imported by its terms. Koehring v. Muemminghoff, 61 Mo. 403; Thompson v. Irwin, 42 Mo. App. 403, 419. Oral evidence is only competent to aid in the construction of a contract, where the terms used are doubtful or ambiguous,

or where they have a technical meaning, different from their ordinary meaning. And the interpretation of the contract by the parties can have no greater force. 1 Greenleaf on Evidence, secs. 277, 278, 295. It is always proper for the court to declare to the jury the legal effect of the facts in proof. This is not singling out nor commenting on evidence. Tyler v. Hall, 106 Mo. 313, 323; Clark v. Cordry, 69 Mo. App. 6; Nicholson v. Golden, 27 Mo. App. 132, 154.

NAGEL & KIRBY for appellant.

It is the duty of the court to determine what the issues are, and to state them to the jury in its instructions. And if the court undertakes to state the issues, it should do so fully; hence instructions which ignore a material issue of fact made by the pleadings, and as to which there was some evidence, are erroneous. Potter v. Railroad, 46 Iowa, 399, 402; Dassler v. Wisley, 32 Mo. 498, 500, 501; Bailey v. Beasley, 32 Mo. App. 406; Welsh v. Edmisson, 46 Mo. App. 282, 287, 288. Instructions should be predicated on the whole evidence. Bergman v. Railway, 104 Mo. 77, 89, 90; Raysdon v. Trumbo, 52 Mo. 35, 38, 39. It is error for an instruction to single out a particular fact or circumstance not in itself controlling, and to make the entire case turn upon it. Steinwender v. Creath, 44 Mo. App. 356, 364-367; Miller v. Marks, 20 Mo. App. 369, 371, 372; Shaffner v. Leahy, 21 Mo. App. 110, 115, 116; Weil v. Schwartz, 21 Mo. App. 372, 382. An instruction which singles out and gives undue prominence to a particular fact in evidence is erroneous. Noyes v. Cunningham, 51 Mo. App. 198; Weil v. Schwartz, 21 Mo. App. 372, 382; Railway v. St. Louis N. Stock Yards, 120 Mo. 541, 559. Parol evidence may always be admitted to identify the subject-matter of a contract. And where the contract terms relating to the subject-matter are of doubtful or uncertain meaning, or

where the existence of a technical or trade meaning is disputed, it is proper to show the prior parol understanding or agreement by the parties, for the purpose of determining in what sense the language of the contract was used by them. Swett v. Shumway, 102 Mass. 365; Quarry v. Clements, 38 Ohio St. 587, 589; Almgren v. Dutilh, 5 N. Y. 28; Gray v. Harper, 1 Story, 574; Stoops v. Smith, 100 Mass. 63. When the language used by the parties is indefinite or of doubtful construction, the practical interpretation put upon it by the parties themselves, as shown by their acts, is entitled to great if not controlling weight. St. Louis Gas Light Co. v. City of St. Louis, 46 Mo. 121, 127; Mathews v. Danahy, 26 Mo. App. 660. There can be no error in stating an issue to the jury in substantially the language used in the pleadings, provided the issue is plainly stated. Fleming v. Shenandoah, 71 Iowa, 456, 458; Crawford v. Noland, 72 Iowa, 673; Planters' Bank v. Bank of A., 10 Gill & J. (Md.) 346, 353.

BIGGS, J.—The plaintiff owns and operates a granite quarry near Graniteville, Missouri. The defendant is the owner of mills in the city of St. Louis for making crushed granite. On September 19, 1891, the plaintiff entered into a written contract with the defendant, in which it agreed to sell and ship to defendant ten thousand tons of "merchantable red granite spalls, suitable for making crushed granite," at times and in quantities ordered, not exceeding three cars per day. The contract was to continue for four years, if ten thousand tons were not shipped sooner, and during the contract the defendant was not to buy spalls elsewhere. It was provided that if plaintiff should fail from any cause not occurring through its default or within its control, to ship granite as agreed, then defendant should have no claim for loss or damage on that account, but might buy elsewhere. Settlements were to be monthly, and plaintiff was

to refund excess of freight paid by defendant. Various shipments were made during the contract period. At the expiration of the contract it was renewed by verbal agreement for another year. The present action was instituted before a justice of the peace upon a statement of account, in which the plaintiff claimed a balance of $321.29. The defendant confessed that the statement of the account was correct. It set up various counterclaims for damages growing out of alleged breaches of the contract. It claimed delays in shipments in August and October, 1894, and in October, 1895, by reason whereof it was compelled to buy spalls from other parties at an increased price; that in September, 1895, it paid excessive freight charges; that plaintiff at divers times shipped spalls of greater size than contemplated by the contract, by reason of which the work at the mill was delayed, and that it was compelled to employ extra labor in reducing the size of the spalls, so that they could be used in defendant's mills. The counterclaims are twelve in number, of the aggregate amount of $385.61. On a trial in the circuit court the jury found in favor of plaintiff in the sum of $328.85, and against the defendant on its counterclaim. The defendant has appealed.

As to the counterclaims the evidence is conflicting. There was evidence as to the trade meaning of the words "merchantable" as applicable to granite spalls. The evidence of the defendant was to the effect that persons in the trade understood the word to mean "one-man spalls," that is a spall that could be handled by one man. The evidence of the plaintiff tended to prove that the word had no trade meaning. The defendant's evidence also tended to prove that it operated two crushers of different sizes, one was large enough to receive "one-man spalls," and the other had double that capacity; that the plaintiff knew of this when the contract was entered into, and contracted with reference to it, and

that at divers times the plaintiff shipped spalls which were too large for the crushers, which caused delay of the work of the mills, and compelled the defendant to employ extra labor to reduce the size of the spalls. The defendant's evidence also tended to prove that at the time the contract was entered into the meaning of the term "merchantable spalls, suitable for making crushed granite," was discussed by the parties, and it was agreed that it meant "spalls that one man can lift."

At the request of the plaintiff the court instructed the jury as follows:

No. 6. "With respect to defendant's various counterclaims, the court instructs you that the plaintiff was only bound to ship spalls in quantities not exceeding three car loads each working day, when ordered by defendant, and when orders theretofore had been filed, plaintiff had the right to use cars for other purposes and was not bound to retain the same for defendant's sole use; and the court further instructs you that even if you believe that plaintiff did, at times mentioned in the counterclaim fail to make any shipment as required, yet, if you find that such delay was due to the failure of plaintiff to secure cars for the shipment of spalls, after all proper efforts on its part to secure same, or that such delay was due to any other cause not within plaintiff's control, or occurring through its fault, then the defendant can make no claim against plaintiff for any damages so sustained or claimed by reason of such delay, and you must find against the defendant upon such items of its counterclaim.

"Regarding the items of overcharges in freight rates claimed by defendant, the court instructs you that you can only allow defendant for such actual excess charges as were actually paid by defendant to the carrier when cars were loaded with more than maximum weights.

"And regarding the items wherein defendant claims damages for the alleged reason that plaintiff shipped spalls of larger size than what is known as merchantable granite spalls,

the court instructs you that plaintiff was required to ship spalls of the size or sizes ordinarily termed and known as 'merchantable' by the people in such business, if you find that the term 'merchantable' was so used and defines a particular size or sizes of spalls, and in that event, if you find that plaintiff shipped spalls of larger size, then defendant can only claim from plaintiff the actual loss sustained by it by reason thereof. And if you believe that the $2 credited by plaintiff for that purpose is sufficient to cover such expenses, then the defendant can not recover for any of such items of its counterclaim.

"And if you find that the word 'merchantable' is not so used in the trade to designate spalls of particular sizes, then the plaintiff was at liberty under such contract to ship any spalls which could be made adaptable for crushed granite purposes, and plaintiff is not responsible for any such loss or increased cost to defendant, and you must find against defendant upon such items of its counterclaim." The instruction is subject to several objections, which were more or less prejudicial to the defendant. (1) As to the kind of spalls contemplated by the contract the instruction is not predicated on the evidence. It says that plaintiff was required to ship spalls of the size or sizes ordinarily termed and known as "merchantable by the people in such business," whereas the plaintiff agreed to sell "merchantable and red granite spalls, suitable for making crushed granite." It will be thus seen that the instruction altogether ignores the latter clause quoted and makes the case turn on the question whether the plaintiff delivered merchantable spalls as understood by people in that business, regardless of whether they were suitable for making crushed granite or not. The omitted clause is the important one. It points out the purpose for which the spalls were to be used and requires them to be suitable for that purpose. Thus it seems to us that the instruction is erroneous and misleading. (2) The contract leaves the question in doubt as to the size of the spalls contemplated by

the parties.    The defendant's evidence tended to prove that in the granite trade the term "merchantable spalls, suitable for making crushed granite" had acquired a definite meaning as to size, viz.: "spalls that one man can lift," or "one-man spalls;" and further that the parties at the time the contract was made agreed that this was its meaning.    The plaintiff's evidence was to the effect that the phrase had no such technical meaning among the trade.    The evidence being thus conflicting, the construction of the contract as to this matter was for the jury.    The error in the instruction is that it made the case turn upon the question whether the word "merchantable" as applied to the spalls contemplated, was used in the trade to designate the particular size, to wit: spalls that one man could lift, thus ignoring the additional evidence of the defendant that the parties at the time agreed that the contract meant this.    This latter evidence was admissible and relevant, as the evidence of usage left the meaning of the phrase ambiguous.    The reception of this evidence did not under the circumstances violate the general rule.    It did not vary nor add to the contract, but was admissible (*ex necessitate*) for the purpose of identifying the subject-matter of the contract.    Thus in the case of Quarry v. Clements, 38 Ohio St. 587, there was a controversy as to the meaning of the word "perch" as used in a contract.    Plaintiff's evidence tended to prove that by usage it meant 16 1-2 cubic feet, while defendant's evidence tended to prove that by custom of the trade twenty-five feet made a perch.    Under this condition of the evidence the defendant offered to prove a conversation between the parties before the contract was signed, in which they agreed that a perch as used in the contract meant twenty-five feet.    The circuit court rejected the testimony and the supreme court of Ohio held it to be error. The court said:    "As the evidence of usage in the business left the word used ambiguous, it was proper to show in what sense the parties used it.    In Sweet v. Shumway, 102 Mass.

365, the court said: "For the purpose of identifying the subject-matter to which the contract relates, parol testimony of that which was in the minds of the parties, and to which their attention was directed at the time, may be given, and statements of the parties then made may be resorted to. The sense in which the parties understood and used the terms expressed in the writing is thus best ascertained." The cases of Almgren v. Dutilh, 5 N. Y. 28, and Gray v. Harper, 1 Story, 574, substantially declare the same rule. (3) Again, the instruction told the jury that if they found that the word "merchantable" was not used in the trade to designate spalls of particular sizes, which the jury evidently did find, then the plaintiff could ship "any spalls which could be made adaptable for crushed granite purposes, whereas the contract provides that the spalls must be suitable for making crushed granite. The contract contemplates that the spalls should be adaptable to the making of crushed granite and not that they could be made so. This portion of the instruction was prejudicial to the defendant as to its counterclaims for "sledging" or extra work in reducing the size of the large spalls.

In an instruction asked by the defendant, and which the court refused, there was a full statement of all items composing the various counterclaims, and also other matters of account, which can scarcely be understood. This instruction was properly refused. In view of a retrial, however, we would suggest that on account of the numerous counterclaims it might be well to embody in an instruction a statement of the total amounts claimed by defendant under each counterclaim. It would be impossible for the jurors without some such aid to carry in their minds the twelve counterclaims set up in the answer.

For the errors pointed out in plaintiff's instruction, the judgment of the circuit court will be reversed and the cause remanded. All concur. Judge Bond concurs in the result only.